**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>uBiome, Inc.,[1]<br>　　　　　Debtor. | Chapter 7<br>Case No. 19-11938-LSS |
| ALFRED T. GIULIANO, Chapter 7 Trustee,<br>　　　　　Plaintiff<br>　　vs.<br>JESSICA RICHMAN and ZACHARY APTE,<br>　　　　　Defendants. | Adv. Proc. No. 21-51032 (LSS)<br>**Ref. Adv. D.I. 10** |

**OBJECTION TO TRUSTEE'S *EX PARTE* MOTION FOR ALTERNATIVE SERVICE ON DEFENDANTS JESSICA RICHMAN AND ZACHARY APTE**

The Trustee has not made a valid attempt to effect service under Rule 4(f) of the Federal Rules of Civil Procedure (the "Federal Rules"), nor has the Trustee shown any necessity or urgency that could justify the request for alternative service. Instead, the Trustee seeks alternative service merely because it would be convenient. The Trustee cannot avoid the Federal Rules. The Court should exercise its discretion and deny *Plaintiff Chapter 7 Trustee's* Ex Parte *Motion for Alternative Service on Defendants Jessica Richman and Zachary Apte Pursuant to Federal Rule of Civil Procedure 4(f)(3)* [Adv. D.I. 10][2] (the "Motion").

**I.　BACKGROUND**

Dr. Jessica Richman and Dr. Zachary Apte are the co-founders and former co-CEOs of uBiome, Inc., ("uBiome") a microbial genomics science company. On September 4, 2019, uBiome filed for Chapter 11 bankruptcy protection in this Court, and on October 11, 2019, that

---

[1] The Debtor and the last four digits of its taxpayer identification number is: uBiome, Inc. (0019). The headquarters for the above-captioned Debtor was located at 360 Langton Street, Suite 301, San Francisco, CA 94103.

[2] References to "Adv. D.I." shall refer to the above-captioned adversary proceeding and references to "D.I." shall refer to the Debtor's main bankruptcy case, Case No. 19-11938-LSS.

case was converted to one under Chapter 7 (the "Bankruptcy"). [D.I. 162.] Dr. Richman and Dr. Apte are living in Germany, where Dr. Richman is suffering from debilitating health issues, and Dr. Apte serves as her full-time caretaker. *See S.E.C. v. Richman, et al.*, Case No. 21-cv-01911-CRB, Dkt. 23 at 3 (N.D. Cal. July 19, 2021).

Dr. Apte and Dr. Richman have had precisely two interactions with this Court. In August 2021, Dr. Apte and Dr. Richman, at the direction of uBiome's D&O insurance carriers, moved the Court for a "comfort order" to allow those insurers to fulfill their obligations under the policies. [D.I. 420.] The Trustee initially objected to the requested relief, but the parties subsequently agreed to a consent order that was approved by the Court. [D.I. 434]. On September 2, 2021, just days after agreeing to the comfort order, and almost two years after his appointment, the Trustee filed a *Complaint for Recovery of Damages for Breach of Fiduciary Duty and Breach of Written Contract*, [Adv. D.I. 1] against Dr. Richman, and on September 4, 2021, amended the Complaint to add Dr. Apte as a defendant. [Adv. D.I. 3.] On October 11, 2021, Dr. Apte and Dr. Richman appeared for the limited purpose of moving the Court to dismiss the amended Complaint for insufficient service of process [Adv. D.I. 8] (the "Motion to Dismiss").

**II.     LEGAL STANDARD**

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Accordingly, a court ordinarily may not exercise its power over those named as defendants in the absence of appropriate service. *Id.*; *see Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, (1987) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). The procedures for effectuating service of process are detailed in Rule 7004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which in turn incorporates parts of Rule 4. *See* Fed. R. Bankr. P. 7004; Fed. R. Civ. P. 4. Rule 4(f) sets forth the rules for serving individuals located in a foreign country:

> (f) SERVING AN INDIVIDUAL IN A FOREIGN COUNTRY. Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
> C) unless prohibited by the foreign country's law, by:
>
> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>
> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Rule 4(f)(3) allows the court to craft a means of alternative service not otherwise prohibited by international agreement, but prior to doing so, the plaintiff must "show that they have reasonably attempted to effectuate service on the defendant(s) and that circumstances are such that the district court's intervention is *necessary*." *Knit With v. Knitting Fever, Inc.*, No. CIV.A. 08-4221, 2010 WL 4977944, at *3 (E.D. Pa. Dec. 7, 2010) (quoting *Prediction Co. LLC v. Rajgarhia*, No. CIV.A. 09–7459, 2010 WL 1050307, at *1 (S.D.N.Y. Mar. 22, 2010) (emphasis added)); *see also Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (finding a plaintiff needs to "demonstrate that the facts and circumstances of the present case necessitate[] the district court's intervention"). Rule 4(f)(3) is not, as the Trustee frames it, available when litigants believe it would be more convenient or to their liking. To the contrary,

such a reading would vitiate Congress' intention that Rule 4(f)(3) be used in "cases of 'urgency,'" that is, when necessary. *Rio Props*., 284 F.3d at 1015 (citing Rule 4's Committee Notes).

### III.    DISCUSSION

Directing service on Dr. Richman and Dr. Apte through alternate means under Rule 4(f)(3) is not warranted or justified by the facts of this case, and the Trustee fails to identify any reasons why the Court's intervention is necessary. First, by his own representations, the Trustee has not attempted valid service on Dr. Apte or Dr. Richman that is reasonably calculated to comply with Bankruptcy Rule 7004 or Rule 4. Second, the Trustee has multiple, reasonable methods of service available, which the Trustee has simply chosen not to pursue. Finally, the Trustee fails to identify any necessity or urgency that makes alternative service through Rule 4(f)(3) appropriate.

#### A.    The Trustee Has Yet To Attempt Valid Service.

As Dr. Apte and Dr. Richman argue in their Motion to Dismiss, the Trustee has yet to attempt valid service. The Trustee initially attempted to mail service of process to two domestic addresses no longer associated with Dr. Apte or Dr. Richman. These efforts were facially invalid because, while the Trustee knew Dr. Apte and Dr. Richman were located in Germany, he nonetheless mailed service pursuant to Bankruptcy Rule 7004(b)(1), which is only applicable to individuals dwelling within the United States. Moreover, the Trustee's "service" would have been invalid under Bankruptcy Rule 7004(b)(1) even if that Rule applied. One of those addresses was not a proper address under Bankruptcy Rule 7004, because it is a commercial mail service, not a "dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession." [*See* Adv. D.I. 11 at 6-8.] As to the other address, although the Trustee attempted to effect service at an address he claims was previously associated with Dr. Apte, the Trustee sent service to a non-existent address. *See id.* at 9-10 (pointing out that the certified receipt indicated a mailing address of Berkeley, Washington

instead of Berkeley, California).[3]  As the Trustee appears to acknowledge by seeking alternative service under Rule 4, which contains no provision for service by mail to a domestic address, any attempted service to date has not constituted a valid form of service on Dr. Apte or Dr. Richman.

Although the Third Circuit has not decided whether a plaintiff must attempt Hague Convention service under Rule 4(f)(1) before it can seek alternative service under Rule 4(f)(3) (*see Crockett v. Luitpold Pharma. Inc.*, 2020 WL 4039046 at *1 (E.D. Pa. July 17, 2020)), the Trustee has not attempted *any* form of valid international service.  Even if Rule 4(f)(3) is not a last resort, the Trustee asks the Court to allow it as the first.  The Court should decline this invitation.

      **B.**      **Statutory Methods of Service Are Available.**

Rule 4(f) offers multiple avenues of service that the Trustee can use, in the first instance, to effectuate service.  As the Trustee admits, he is free to serve Dr. Apte and Dr. Richman through the Hague Convention.  *See* Mot. at 22; Fed. R. Civ. P. 4(f)(1).  Although the Trustee buries any reference to them in the bottom of a lengthy footnote, letters rogatory are a second, available method of service.  *See* Mot. at 10 n.4; Fed. R. Civ. P. 4(f)(2)(B).  In short, the Trustee fails to explain why, in spite of these available methods of service, this Court's intervention is urgently required.

      **C.**      **Alternative Service Is Not Warranted.**

            **1.**      **The Trustee Must Show That Alternative Service Is Necessary Or Urgent.**

As the Trustee admits, directing alternative service under Rule 4(f) is warranted only when it is "necessary."  Mot. at 5 (quoting *Knit With*, 2010 WL 4977944 at *4).  The advisory committee notes to Rule 4 suggest that alternative service under subsection (f)(3) may be appropriate in "cases of 'urgency.'"  *Rio Props.*, 284 F.3d at 1015.  Thus, the Trustee must "demonstrate that the facts and circumstances of the present case *necessitate*[] the . . . court's

---

[3] If the Trustee had used the correct address, that attempted service would remain invalid for yet the additional reason that Dr. Apte had not resided at that address since 2014.

intervention." *Id.* at 1016 (emphasis added). Instead of making the required argument, the Trustee instead string-cites cases that stand for the unremarkable proposition that a court may grant alternative service in certain circumstances. There is no evidence in the record to require the Court's intervention here.

The cases cited by the Trustee demonstrate the type of "necessity" required for the Court's intervention. For example, the Trustee relies on *Knit With v. Knitting Fever, Inc.*, including for the proposition that "service upon a foreign defendant through counsel is appropriate 'to prevent further delays in litigation.'" 2010 WL 4977944 at * 4 (quoting *LG Elects, Inc. v. Asko Appliances, Inc.*, No. 08-828, 2009 WL 1811098, at *4 (D. Del. June 23, 2009)). But in *Knit With*, the plaintiff had been unable to successfully serve the foreign defendant for almost eighteen months. *Id.* at *1. The plaintiff had unsuccessfully made "multiple efforts to effect service," including through the Hague Convention and the Italian Central Authority, which had indicated that service could take up to three months. *Id.* at *3. In granting the motion for alternative service, the court held that "its intervention [was] *necessary*" because "Plaintiff has made numerous attempts to serve Defendants," who had "repeatedly and actively sought to thwart or evade such service." *Id.* at *5. In coming to this conclusion, the court held that the Plaintiffs had "exercised sufficient due diligence to serve these Defendants," which was a "threshold requirement for invoking the Court's authority under Rule 4(f)(3)." *Id.*

The Trustee also cites *LG Electronics, Inc. v. ASKO Appliances, Inc.*, No. 08-828, 2009 WL 1811098, at *4 (D. Del. June 23, 2009) to support "service upon domestic counsel." Mot. at 11. The facts of that case are also readily distinguishable, and none of the cited factors is present here. First, in *LG Electronics*, the plaintiff attempted service on the relevant foreign defendant through the Hague Convention. *Id.* The defendant, however, made an "intentional, vexatious attempt to evade service, if not avoid it entirely." *Id.* Because of that evasion, there was a substantial delay in the proceedings after the plaintiffs had attempted service through the normal channels. *Id.* at *1-2. In light of those circumstances, the court directed service on the law firm that represented the unserved defendant and a co-defendant that had been properly served and

answered the complaint. *See id.* at *2, *4. In other words, the firm was already actively engaged in litigating the matter when the court directed service, and, even then, the Court only directed service after plaintiff had gone through far more effort than the Trustee has here and the defendant had actively sought to evade or avoid service.

In short, the cases the Trustee string cites but otherwise fails to analyze, demonstrate that the burden is on the Trustee to provide the court with evidence in the record that makes the court's intervention necessary. Intervention is necessary not when the plaintiff has taken no steps to attempt service and simply rushes to the courthouse out of convenience; rather, it is necessary when, after diligent effort, the court must step in.

### 2.     The Trustee Provides No Evidence That Intervention Is Necessary.

The circumstances here plainly do not require intervention, and are in stark contrast to the facts of the Trustee's cited cases. It is undisputed that the Trustee has made no effort whatsoever to serve Dr. Apte or Dr. Richman under Rule 4(f), and therefore the Trustee has failed the "threshold requirement" for seeking alternative service.[4] *Knit With*, 2010 WL 4977944 at *5. The Trustee refuses to attempt service under the Hague Convention—a step the plaintiffs in *Knit With* and *LG Electronics* diligently pursued.[5] The Trustee's argument that he does not know Dr.

---

[4] The Trustee's failed attempt at domestic service—mailing the Amended Complaint and Amended Summons to defunct and independently improper mailing addresses–is irrelevant because the Bankruptcy Rule that authorized mailed service does not apply to parties who are abroad.

[5] Although the Trustee attempts to argue that service under the Hague Convention is not needed in order to grant a motion for alternative service through unanalyzed string case cites, the cases cited by the Trustee are easily distinguishable. Mot. at 8. For example, the court in *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, No. 18-cv-5194, 2018 WL 6446601, at *3 (E.D. Pa. Dec. 10, 2018) granted a motion for alternative service due to a pending motion for preliminary injunction, which provided the threshold urgency for such an action. The other cases cited by the Trustee fail to support the Trustee's proposition because those cases explicitly included facts of attempted valid service prior to seeking court intervention. *See Brookshire Bros. v. Chiquita Brands Int'l, Inc.*, No. 05-cv-21962, 2007 WL 1577771, at *1 (S.D. Fla. May 31, 2007); *U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 620 (S.D. Fla. 2011); *TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 694 (S.D. Fla. 2012) (permitted alternative service while also ordering service pursuant to Rule 4(f)(1) and 4(f)(2); *U.S. ex rel Bunk v. Birkart Globistics GmbH & Co.*, No. 02-cv-1168 AJT TRJ, 2010 WL 423247, at *2 (E.D. Va. Feb. 4, 2010). Finally, in *Brown v. China Integrated Energy, Inc.*, the court permitted alternative service pursuant to Ninth Circuit precedent "that Rule 4(f)(3) is an equal means of effecting service of process under the Federal Rules of Civil Procedure." 285 F.R.D. 560, 565 (C.D. Cal. 2012) (quoting *Rio Props.*, 284 F.3d at 1016). However, as noted above, the Third Circuit has not yet addressed whether a plaintiff must attempt Hague Convention service under Rule 4(f)(1) before it can seek alternative service under Rule 4(f)(3). *See Crockett*, 2020 WL 4039046 at *1.

Apte or Dr. Richman's address is a baseless excuse. Dr. Apte and Dr. Richman are not evading service—indeed, they could not, because the Trustee has yet to attempt a valid method of service in Germany, where they currently reside due to Dr. Richman's illness. Finally, there has been no delay in litigation here, at least not by Dr. Apte or Dr. Richman. The Trustee chose to wait until September 2021 to commence this adversary proceeding, so it has been pending only two months. In short, the Trustee fails to show why this Court's intervention is necessary, and the Court should therefore deny the Motion. *See Knit With*, 2010 WL 4977944 at *4 (finding that a court may consider alternative service "[o]nce a court is convinced that its intervention is necessary and alternate service is appropriate").

The Trustee also argues that "courts also permit service upon domestic counsel where the address of foreign defendants is unknown, the foreign defendant has evaded service, or the failure to permit such service will result in long delays," yet the Trustee fails to provide any evidence that any one of these factors is present. Mot. at 11. First, while the Trustee states that Dr. Apte and Dr. Richman's address is unknown, he offers no evidence to suggest he made any effort to determine their address.[6] The Trustee is required to do more than bury his head in the sand before declaring that their address is unknown. The Trustee does not identify a single step he has taken to attempt to determine their address.

The Trustee uses his baseless argument about Dr. Apte and Dr. Richman's address to conclude that service through the Hague Convention would be "fruitless," but that too is incorrect. The Trustee argues that the "German Central Authority would not be able to locate the Defendants to effectuate service." Mot. at 12. This is a strawman supported only by the Trustee's deliberate ignorance. If the Trustee attempts service through the Hague Convention, "the German receiving agency to which recourse is made will usually endeavor to ascertain" the

---

[6] The Trustee makes the baffling argument that "Defendants have failed even to competently establish that they currently reside in Germany," Mot. at 12, yet the Trustee believes they are in Germany, as that fact serves as the sole basis for his motion. *See* Mot. at 6 n.3 (stating "upon information and belief," that Dr. Apte and Dr. Richman are "located in Germany"). The Trustee also fails to cite any authority for the proposition that it is Dr. Apte or Dr. Richman's burden to "establish" they are in Germany.

parties' correct addresses.[7] "This does not only apply in cases where the addressee has moved but also when his or her address on the request for service is incorrect or incomplete."[8] The Trustee cannot know if service will be fruitless unless he tries, which he has thus far refused to do in favor of attempted short cuts. His own inaction cannot serve as a basis for necessity.

Second, as discussed above, the Trustee puts forth no evidence that Dr. Apte or Dr. Richman have "evaded" service, and it is logically impossible for them to have evaded service before the Trustee has bothered to attempt any valid service. To the extent the Trustee would argue that Dr. Apte or Dr. Richman are evading service simply by being abroad, there is no evidence to support that conclusion, particularly where they first traveled abroad more than a year prior to the filing of this case.

Finally, the Trustee offers no evidence that alternative service is required to prevent "long delays" or avoid substantial costs to the estate. The Trustee must do more than speculate. The Trustee purports to argue, without any support, that service under the Hague Convention "often takes several months," citing to cases involving service on Japanese, Swiss, Czech, and Italian defendants. Mot. at 10 n.4 (citing cases). Those cases have no relevance to the question of whether it is necessary here to order alternative service for parties in Germany because the Hague Convention will cause a prejudicial delay. In fact, the Hague Conference Service Convention states that service in Germany "is usually processed within three months including the time required for shipment,"[9] and the SEC recently received its response in approximately two months in the Trustee's cited case. *See Richman*, Case No. 21-cv-01911, Dkt. 13 at 3-4. It is implausible that, when there have been no delays in this litigation to date, three months would

---

[7] *See Service of documents: official transmission of legal documents*, European Judicial Network, https://e-justice.europa.eu/content_service_of_documents-371-de-en.do?init=true&member=1.

[8] *Id.*

[9] *Germany - Central Authority & practical information*, Hague Conference on Private International Law, https://www.hcch.net/en/states/authorities/details3/?aid=257.

be prejudicial to the Trustee.[10] That the Trustee has chosen not to start this process, thus wasting two of those three months, is not the fault of defendants or this Court.

Moreover, the Trustee's own actions demonstrate a lack of urgency belying his argument that the normal avenues of service would be prejudicial and intervention from this Court is necessary. Despite being appointed in October 2019, the Trustee waited until September 2021 to file the Complaint. This might be understandable if the Trustee used that time to investigate his claims, but here, the Complaint is copied *verbatim* from the SEC complaint filed against Dr. Apte and Dr. Richman in March 2021. *See Richman*, Case No. 21-cv-01911, Dkt. 1. The Trustee cannot wait six months after the March 2021 SEC complaint, on the eve of the expiration of the statute of limitations, copy another litigant's complaint, and then cry wolf at the prospect of a minor delay in effectuating the service he has not legitimately attempted.

Nor is there any evidence that service through established methods of international law would be an undue cost on the estate. Again, the Trustee states, without any supporting evidence, that service would be "costly" because the Trustee must have "all documents translated to German."[11] Mot. at 3, 10. The Trustee's argument misstates the requirements of the Hague Convention and is without support. First, the Hague Convention permits parties to serve documents without translation. Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Article 5 (noting that translation is required only in certain circumstances). Further, the Trustee provides no evidence to support the conclusion that mere translation is unnecessarily expensive. Finally, Germany does "not regularly charge fees for service," and if there are "administrative expenses involved, the minimal costs incurred

---

[10] The Trustee also cites a case where a party sought alternative service for parties in Germany, though notably, with no analysis whatsoever and for a proposition separate from preventing long delays. *See* Mot. at 12; *In re Takata Airbag Prods. Liab. Litig.*, No. 15-02599-MD, 2017 WL 8809362, at *2 (S.D. Fla. Mar. 24, 2017), *report and recommendation adopted*, No. 14-24009-CV, 2017 WL 8809106 (S.D. Fla. Apr. 27, 2017).

[11] As stated above, the Trustee's only "evidence" for this claim are cases involving service in other countries, not in Germany. Mot. at 10 n.4. Those cases are irrelevant.

thereby are usually not collected on."[12]  The Trustee cannot merely assert, without evidence, that service would be costly.

### B. The SEC Case Demonstrates How the Trustee's Motion Is Premature.

The Trustee suggests that because a court granted the SEC's motion for alternative service in a matter involving Dr. Apte and Dr. Richman, this Court should do the same for the Trustee.  That argument ignores critical differences between the two requests.  In that case, the SEC had attempted service through the Hague Convention before seeking alternative service.  *Richman*, No. 21-cv-01911, Dkt. 13 at 3.  But, service through the Hague Convention was declined because "the designated Central Authority . . . concluded that the SEC's actions are not civil or commercial under German law."  *Id.*[13]  The court therefore granted the motion for alternative service, but only after finding that under the specific circumstances of the case, that "*inability* to serve Defendants under the Hague Convention and Defendants' refusal to waive service are enough to *necessitate* the Court's intervention."  *Id.* at 9 (emphasis added).

Here, the Trustee has shown only an unwillingness to serve Dr. Apte and Dr. Richman under the Hague Convention.  The Trustee cannot argue that his claim is the same as the SEC's, and therefore there is no reason to think that the German Central Authority will decline service.  At minimum, the Trustee should pursue that process, particularly where the Trustee is unable to articulate any reason that a different process is necessary.

### C. The Trustee Should Not Bypass Statutory Methods of Service.

At bottom, the Trustee resists the regular channels of service because, in his words, it would be "pointless[]."  Mot. at 11.  In his view, because this is a bankruptcy case, the Court

---

[12] *Germany - Central Authority & practical information*, Hague Conference on Private International Law, https://www.hcch.net/en/states/authorities/details3/?aid=257.

[13] For example, in June 2012, Germany authorities refused to serve an SEC complaint alleging Foreign Corrupt Practices Act violations against former executives of Siemens AG for the same exact reason Germany declined to serve Drs. Apte and Richman in the SEC matter; namely, because SEC actions to enforce U.S. securities law are not considered civil or commercial under German law.  *See* C.M. Matthews, *SEC to Serve Former Siemens Execs through Newspaper in FCPA Case*, The Wall Street Journal (June 20, 2012), www.wsj.com/articles/BL-CCB-6611 (last accessed June 23, 2021); Mem. in Supp. of Mot. for Serv. by Publ., *SEC v. Sharef*, S.D.N.Y. (1:11-cv-09073-SAS), at Dkt. 7.

11

should permit whatever service he suspects would be least expensive. *See id.* But this is not the law—the Federal Rules apply equally to the Trustee. It is a long-held and accepted principle that a plaintiff cannot bypass the enumerated methods of service simply by serving a complaint on a defendant's prospective counsel. *See, e.g.*, *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990) ("Since service of process on an attorney not authorized to accept service for his client is ineffective, . . . delivery was not sufficient to effect service on [defendant].") (citations omitted); *Schultz v. Schultz*, 436 F.2d 635, 639 (7th Cir. 1971) ("Thus, the fact that Axel was defendant's attorney in an unrelated action furnishes no basis for the validation of the service of process on him as such. The question remains as to whether he was defendant's agent, authorized by appointment to receive service of process in the instant case."); *Schwarz v. Thomas*, 222 F.2d 305 (D.C. Cir. 1955) (attorney representing defendant in another litigation has no authority to accept service of process in a separate suit). Rule 4(f)(3) does not provide differently. Individuals who reside overseas should be able to retain counsel of their choice without the risk that the scope of that representation will expand to include accepting unauthorized service of process because of an adversary's desire for expediency. The Court should deviate from that baseline only when necessary, a showing the Trustee cannot make here.

**IV.    CONCLUSION**

For these reasons, Dr. Apte and Dr. Richman respectfully request that the Court deny the Trustee's Motion to effect service through alternative means by ordering counsel to Dr. Jessica Richman and Dr. Zachary Apte to accept service on their respective behalves.

Dated: November 8, 2021
Wilmington, Delaware

**POTTER ANDERSON & CORROON LLP**

/s/ *L. Katherine Good*
L. Katherine Good, Bar No. 5101
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
Telephone: +302 984 6000
Facsimile: +302 658 1192
kgood@potteranderson.com

-and-

**COVINGTON & BURLING, LLP**
W. Douglas Sprague
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: +1 415 591 6000
dsprague@cov.com

*Attorneys for Zachary Apte*

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Brett D. Fallon*
Brett D. Fallon, Bar No. 2480
Jaclyn C. Marasco, Bar No. 6477
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: +1 302 467 4200
Facsimile: +1 302 467 4201
brett.fallon@faegredrinker.com
jaclyn.marasco@faegredrinker.com

Joel Hammerman
311 S. Wacker Drive, Suite 4300
Chicago, IL 60606
Telephone: +1 312-356-5060
joel.hammerman@faegredrinker.com

*Attorneys for Jessica Richman*